**SO ORDERED.**

**SIGNED this 02 day of July, 2009.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| AUSTIN DEAN WAITE | ) | Case No. 07-41701 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| HOME NATIONAL BANK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 08-7010 |
| | ) | |
| AUSTIN DEAN WAITE | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS
AND MOTION FOR SUMMARY JUDGMENT,
AND SETTING PROCEEDING FOR TRIAL**

This matter is before the Court on Defendant's Motion to Dismiss[1] and Motion for Summary Judgment.[2] The parties have fully briefed the issues in this case, and the Court is now ready to rule. For the reasons set forth below, the Court denies both motions and finds that this case should proceed to trial.

This is a core proceeding over which this Court has jurisdiction to enter a final order.[3]

## I. FINDINGS OF FACT

Defendant, Austin Dean Waite ("Waite") and Plaintiff, Home National Bank ("Bank"), have conducted business dealings for a number of years. Waite filed a petition for Chapter 7 bankruptcy on December 12, 2007. On the date Waite filed his bankruptcy petition, he was indebted to Bank under a promissory note dated October 24, 2005, which was amended by a change in terms agreement dated October 24, 2006. He was also indebted to Bank under a promissory note dated February 23, 2004, as amended by a change in terms agreement dated February 23, 2007.

As security for these loans, Waite executed agricultural security agreements dated February 23, 2004 and October 24, 2005, giving the Bank a security interest in all of his inventory, equipment, farm products, livestock, crops, accounts, contract rights, general intangibles, and other personal property. The promissory note dated October 24, 2005, was used, in part, to pay off or refinance a prior note between Waite and the Bank.

The loans provide that they were made for specific purposes. The promissory note dated February 23, 2004, states that the purpose of the loan is for the purchase of a cow herd. The

---

[1] Doc. 40.

[2] Doc. 42.

[3] 28 U.S.C. § 157(b)(1)(core proceeding and § 157(b)(2)(I)) (action to determine dischargeability of debt is core proceeding) , 28 U.S.C. § 1334 and 11 U.S.C. § 523(c).

2

promissory note dated October 24, 2005, provides a revolving line of credit to Waite, and states that the purpose of the loan is for seasonal working capital needs.

The evidence in the case, when viewed in the light most favorable to the Bank (the non-moving party), is that Waite co-mingled funds from the business line of credit with his personal funds, including commingled business and personal credit card purchases and payments, and failed to properly separate expenses related to his farming business and his personal life, to the Bank's detriment. The Bank also contends that Waite engaged in a series of acts prior to filing his bankruptcy petition that evidences an intent on his part to cause injury to the Bank. These actions include:

1. Waite began transferring and paying off business and personal credit card balances in large amounts;

2. Waite sold tools and vehicles to his wife's company, Jade Trucking, yet the goods remained on his property and he retained the same access to the goods as prior to the sale, and did not account for the goods as assets or transferred property in his bankruptcy filing;

3. Waite made final and substantial payments to his grandmother for real property and paid an unrelated debt to his mother;

4. Waite took out a personal life insurance policy and used his business checking account to pay for it;

5. Waite paid from the funds that were supposed to be used for only business purposes substantial sums to pay his monthly personal cell phone bill;

6. Waite commingled business and personal credit card purchases and payments even though he knew it was important to keep business and personal finances separate; and

7. Waite made payments on credit cards on which personal purchases had been made with his business checking account even though he knew the funds should only be used for seasonal operating capital.

Waite contends that some of these actions were taken with the knowledge and/or consent of the Bank, and that they fail to demonstrate an intent on his part to cause a willful and malicious injury to the Bank.

## II. STANDARD OF REVIEW

Waite has filed both a motion to dismiss and a motion for summary judgment. Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b) into all adversary proceedings. To prevail on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the movant must demonstrate beyond a doubt that there is no set of facts in support of plaintiff's theory of recovery that would entitle plaintiff to relief.[4] In evaluating a motion to dismiss for failure to state a claim, all well-pleaded allegations will be accepted as true and will be construed in the light most favorable to the plaintiff.[5]

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[6] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[7] An issue is "genuine" if "there is sufficient evidence on each side

---

[4] *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kansas*, 927 F.2d 1111, 1115 (10th Cir. 1991).

[5] *In re American Freight System, Inc.*, 179 B.R. 952, 956 (Bankr. D. Kan. 1995).

[6] Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56(c) is made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7056.

[7] *Lifewise Master Funding v. Telebank,* 374 F.3d 917, 927 (10th Cir. 2004).

so that a rational trier of fact could resolve the issue either way."[8]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[9]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[10]  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[11]

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[12]  To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[13]

---

[8] *Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[9] *Id.* (citing *Anderson,* 477 U.S. at 248).

[10] *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[11] *Id.* (citing *Celotex,* 477 U.S. at 325).

[12] *Id.* (citing Fed. R. Civ. P. 56(e)).

[13] *Diaz v. Paul J. Kennedy Law Firm,* 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]

## III. ANALYSIS

The bank filed this action seeking a denial of discharge as to its debt pursuant to § 523(a)(6). Section 523(a)(6) provides an exception to discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity." In 1998, the Supreme Court held that this provision only applies to a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.[15] The Court explained that this meant the debtor must have intended the consequences of the act he or she performed, not simply the act itself.[16] "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[17] As recently noted by the Court of Appeals for the Tenth Circuit, without proof of <u>both</u> a willful act and a malicious injury, an objection to discharge under § 523(a)(6) must fail.[18]

### A. Motion to Dismiss

Waite contends that the Bank's complaint should be dismissed because it fails to state a claim upon which relief can be granted. Specifically, Waite claims that the Bank's claim for "conversion"

---

[14]*Celotex,* 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

[15]*Kawaauhau v. Geiger*, 523 U.S. 57, 60-64 (1998).

[16]*Id.* at 61-62.

[17]*Id.* at 61.

[18]*Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004).

6

Case 08-07010    Doc# 47    Filed 07/02/09    Page 6 of 13

fails under Kansas law based on the fact that his relationship with the Bank is that of a debtor and creditor and, pursuant to the Kansas Supreme Court in *Temmen v. Kent-Brown Chevrolet Co.*,[19] an action will not lie for conversion of a mere debt or chose in action. "*Temmen* stands for the proposition that when one party is contractually obligated to pay a second party, if the first party wrongfully fails to pay the contract amount, then a breach of contract occurs, not a conversion."[20]

The Court finds that Waite has failed to demonstrate that this case should be dismissed based upon a failure to state a claim upon which relief can be granted. In order to prove a claim for conversion, the Bank must show that money belonging to the Bank was placed in Waite's custody for a particular purpose, and Waite misappropriated the money for a different purpose.[21] Pursuant to the claims made by the Bank in the final Pretrial Order,[22] which obviously supersedes the pleadings and controls the case at this point, Waite was only authorized to draw funds against his line of credit if those funds were used for "seasonal operating capital." The Bank contends that Waite improperly withdrew those funds for purposes other than seasonal operating capital, and thus took the Bank's property without proper authorization. If proven, the allegations made by the Bank could support a claim for conversion (which, admittedly, without a further showing of willfulness and maliciousness would be insufficient to also result in non-discharge under 11 U.S.C. § 523(a)(6)).

The Court notes that this is not a typical situation where a debtor simply fails to repay a debt to a creditor, or where a debtor uses funds that rightfully should have been used to repay a creditor

---

[19] 227 Kan. 45, 50 (1980).

[20] *Master Mortg. Inv. Fund Inc. v. American Nat. Fire Ins. Co. (In re Master Mortg. Inv. Fund, Inc.)*, 161 B.R. 228, 237 (Bankr. W.D. Mo. 1993).

[21] *In re Pangborn*, 2008 WL 782805 (Bankr. D. Kan. 2008).

[22] Doc. 36.

7

for some other purpose. In this case, the line of credit was established for a definite purpose, and to the extent the funds were withdrawn for some other purpose, their use was unauthorized. The Court finds this case to be distinguishable from *Temmen* and that the Bank has stated a claim for conversion.

   B.   **Motion for Summary Judgment**

Waite claims, as an alternative to his Motion to Dismiss, that he is entitled to summary judgment on the claims brought by the Bank. According to Waite, he lacked the requisite intent to willfully and maliciously cause harm to the Bank, which is required for the debt to be found nondischargeable pursuant to § 523(a)(6). In support of this claim, Waite has submitted an affidavit claiming that he never intended to cause harm to the Bank and that he did not knowingly or willfully misuse any funds. The Bank controverts this affidavit by pointing to evidence of Waite's actions, set forth above, which it claims demonstrates Waite did have the requisite intent.

Questions of an individual's mental state and whether they acted willfully and maliciously are seldom appropriate issues for summary judgment.[23] This is especially true in cases such as this, where the act in question (using funds for an unauthorized purpose) does not show a clear intent to act willfully and maliciously (such as a case where a debtor were to assault another),[24] or a case where the act in question tends to show no willfulness or maliciousness (such as a case where an individual falls asleep while driving and causes an accident). The acts themselves in this case do not

---

[23]*See United States Trustee v. Hoke (In re Hoke)*, 2009 WL 1684474 at *7 (Bankr. D. Kan. 2009) (citing *Prochaska v. Marcoux,* 632 F.2d 848, 851 (10th Cir. 1980) (stating "[a]s a general rule, questions involving a person's intent or other state of mind cannot be resolved by summary judgment."). *See also Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 792 (Bankr. D. Colo. 2002) (noting that "great circumspection is required where summary judgment is sought on an issue involving state of mind.").

[24]*See Reynolds v. Phillips*, Case No. 08-7046 (Bankr. D. Kan. July 2, 2009) (finding that damages resulting from striking plaintiff with a pool cue was willful and malicious under § 523(a)(6)).

8

provide a clear answer to the question of willful or malicious intent. For that reason, the Court will require evidence to determine Waite's intent.

Again, Waite suggests that his affidavit should be dispositive in deciding whether he had the requisite mental state necessary for this debt to be nondischargeable under § 523(a)(6). Clearly Waite's testimony concerning his mental state will be a critical piece of evidence at this trial. However, if all that was required to obtain summary judgment in a § 523(a)(6) dischargeability action was an affidavit from the debtor essentially saying "I did not mean to do it," then few, if any, cases would ever progress beyond the summary judgment stage. In cases where there exists other evidence, either circumstantial or direct, that tend to call into question the debtor's mental state, then summary judgment should not be granted in favor of the debtor.

As outlined above, the Bank has raised several points tending to show that Debtor, in shorthand, knew better but did it any way, with the intent to hurt the Bank. In his reply brief, Waite takes exception to each of these claims by the Bank. With regard to many of the allegations, Waite points out that the allegations made by the Bank are not fully set forth in the record.

The Court agrees that the arguments made by the Bank are not fully and directly taken from the evidentiary record in this case, and the Court takes that into consideration when ruling on this motion. However, there is sufficient evidence contained in the record to raise reasonable inferences that create at least some doubt as to Waite's mental state. The transfer of property to Jade Trucking, the co-mingling of business and personal funds, the failure to separate business and personal credit card use, etc., when taken together in a light most favorable to Bank, provide a sufficient factual dispute to survive summary judgment.

9

The Court finds that, although a close case, the Bank has presented sufficient evidence showing the existence of a genuine issue of material fact that precludes summary judgment. The Court is mindful of the fact that the Bank will ultimately bear the burden of proving at trial that Waite's actions were willful and malicious, and that the evidence of Waite's mental state as set forth in the Bank's response to the summary judgment motion is not overwhelming. However, this is not the time for a weighing of the evidence. A reasonable fact finder could potentially find that Waite acted with the requisite intent to support a finding of non-dischargeability under § 523(a)(6), and that is all the Bank must demonstrate to survive summary judgment.

In addition to arguing for summary judgment on all claims, Waite alternatively raises two arguments why the Court should grant him partial summary judgment. First, Waite contends that any claim the Bank has to any part of the debt he owes the Bank arising prior to December 12, 2005 (two years prior to the filing of his bankruptcy petition) is barred by the statute of limitations. Second, Waite contends that all but eight of the 84 checks in question were written prior to the refinancing of his line of credit on October 24, 2005. Waite argues that because the debt associated with those 76 checks was paid off when he took out the new note on October 24, 2005, any claim of damages to the Bank related to those checks has been eliminated by the refinancing.

As to Waite's statute of limitations argument, it is true that an action for taking, detaining or injuring personal property must be brought within two years of the date it accrues.[25] However, the period of limitations does not commence until the fact of injury becomes reasonably ascertainable to the injured party.[26]

---

[25] K.S.A. 60-513(a)(2).

[26] K.S.A. 60-513(b).

10

The Bank contends it was not aware of Waite's allegedly improper expenditures and, therefore, the statute of limitations should be tolled so the total of all requested amounts are recoverable (again, if they can prove the elements under § 523(a)(6)). The Bank contends it did not reasonably ascertain Waite's actions giving rise to the claim for conversion until early 2007 because Waite concealed his actions by making personal purchases with his business credit cards and paying off the balances with his business checking account, all while not informing the Bank he had the credit cards or commingled the expenses. The Bank maintains it did not have an opportunity to observe the misappropriation of funds because Waite failed to inform the bank of the credit cards and wrote one check to pay numerous unrelated transactions to conceal his actions.

Waite argues the Court should hold the statute of limitations was not tolled because many of the checks written, and funds expended, were of a repetitive nature. In other words, he claims he had made similar payments over a long period of time, and thus the Bank was, or should have been, aware of these expenditures and how he conducted his business and personal affairs. The Bank responds that its own internal monitoring policy, coupled with Waite's long- standing relationship with the Bank and its employees, resulted in Waite's account not being closely scrutinized, and thus it did not, nor should it have, had notice of his actions.

The Court finds there are also genuine issues of material fact as to whether the statute of limitations has run on the checks that were written prior to December 12, 2005. The Court does not have sufficient evidence before it to determine whether the Bank knew of Waite's business practices and the way the money was being spent, or what actions, if any, Waite undertook to conceal how he used funds he was required to withdraw for the sole purpose of seasonal operating capital.

11

Depending on the evidence presented at trial, these claims may very well be barred by the statute of limitations, but that decision cannot be made on the record presently before the Court.

The Court similarly finds that summary judgment is not appropriate on the checks that were written prior to October 14, 2007. Waite argues that by refinancing the debt that resulted from his withdrawal of "seasonal operating capital" prior to October 14, 2007, he essentially cleansed the funds of any alleged impropriety committed prior to that time. The Bank argues the true issue is whether the debt, which carried over to the current line of credit, should be excepted from discharge given Waite acted contrary to known restrictions on his use of the line of credit. The Bank also asserts that, in equity, a borrower should not be able to immunize himself against an otherwise legitimate cause of action held by his lender if he can manage to renew his debt before the lender has a chance to discover the malfeasance. The lender should not suffer the consequences of the borrower's bad acts in that scenario.

The Court agrees with the Bank, at least for purposes of this summary judgment motion. If in fact the Bank was unaware of Waite's actions prior to signing off on the refinancing of the original line of credit, and if the Bank can demonstrate that he took funds from the line of credit knowing it was improper to do so, and he nevertheless did so with intent to injure the Bank, the Court finds that Waite cannot cleanse himself of any prior improper actions by simply refinancing the debt with the same lender. Section 523(a)(6) reflects the policy consideration that certain conduct is so socially reprehensible that the resulting indebtedness is not worthy of discharge.[27] To allow a debtor to erase otherwise non-dischargeable debts by essentially tying them to a new loan number with the same lender would clearly not serve the purpose of § 523(a)(6). If the debts that

---

[27] 3 W. Norton, Bankruptcy Law and Practice 3d § 57.44, p. 126 (2009).

existed prior to the refinance were non-dischargeable under § 523(a)(6), then the fact the Bank refinanced the debt will not cleanse the transaction of those actions.

IV. **CONCLUSION**

For the reasons set forth above, the Court finds that the Defendant's Motion to Dismiss and Motion for Summary Judgment should be denied. The Court finds that Home National Bank has sufficiently plead a case for conversion under the facts of this case, and that there are genuine issues of fact that preclude summary judgment as to whether Debtor's actions were willful and malicious and whether the statute of limitations bars a portion of the Bank's claims. The Court also finds that the refinancing of the original note with the same lender does not prohibit the Bank from pursing a non-dischargeability claim as to the original debt under the facts of this case.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss and for Summary Judgment are denied.

**IT IS FURTHER ORDERED** that this case will proceed to trial on the Court's stacked evidentiary docket beginning **August 17-18, 2009.**

# # #